Tijuan CANADY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–001–CR.

Court of Appeals of Texas,
Waco.

Dec. 11, 2002.

Rehearing Overruled March 31, 2003.

William L. Smith, Teague, for appellant.

Robert W. Gage, Freestone County Atty., Fairfield, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

### OPINION

TOM GRAY, Justice.

Tijuan Canady was charged with capital murder. The jury found him guilty of the lesser included offense of murder and assessed punishment at life in prison. We affirm.

### BACKGROUND

Canady rented a house from Christine Gibson and her husband. While her hus-band was away, Canady came to Gibson's home to discuss a light bill. An argument began between Canady and Mrs. Gibson. Canady ultimately shot Mrs. Gibson several times with her own weapon and fled the scene out a back window. He threw the gun in a neighbor's stock tank where it was later recovered.

### MOTION TO SUPPRESS

■ In his first issue, Canady contends that the trial court erred in denying his motion to suppress his oral and written statements. Canady argues that he suffers from a severe mental defect that rendered his confessions inadmissible because he could not understand the significance of waiving his *Miranda*[1] rights.

■ In reviewing claims of *Miranda* violations, we conduct the bifurcated review articulated in *Guzman v. State. Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex.Crim. App.2001); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor while we review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Ripkowski*, 61 S.W.3d at 381.

■ An inquiry into the waiver of *Miranda* rights has two distinct dimensions. *Id.* at 384. First, the waiver must be voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Ripkowski*, 61 S.W.3d at 384. Cana-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We recognize that the rights discussed in *Miranda* are actually rights guaranteed by the United States Constitution and were not actually rights created by *Miranda*. It would be more precise to discuss this as *Miranda* warnings regarding the waiver of those constitutionally guaranteed rights. We will, however, use "*Miranda* rights" as a short-hand reference to those rights.

dy does not contend that he was coerced into waiving his *Miranda* rights.

█ Second, the waiver must be made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* The Constitution does not require, however, that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privileges. *Ripkowski,* 61 S.W.3d at 384, n. 10 (citing *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)). It is enough that the suspect knows that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. *Id.* Canady contends that because he mentally functioned at the same level as a seven or eight year old, he could not effectively *waive* his *Miranda* rights. Mental deficiency is a factor relevant to the "awareness" prong, but does not automatically determine the issue. *Id.* at 384.

After several hearings, the trial court found the following facts:

1. The accused, Tijuan Lamont Canady, was in custody in the Freestone County jail, on June 17, 1999, as a result of terroristic threat, burglary and possession of marihuana allegations.

2. On June 17, 1999, Mr. Canady informed Fairfield Police Department Officer Scott Shaw, that he wanted to speak to Fairfield Police Department [O]fficer Tomas Echartea.

3. Before interviewing Mr. Canady, Officer Echartea read the *Miranda v. Arizona* warnings to Mr. Canady. The accused had previously received the Miranda warning on June 15, 1999, June 16, 1999 and June 17, 1999, from Fairfield P.D. Officer Steve Brooks and Shirley Mays, Justice of the Peace, Precinct 4, Freestone County, Texas.

4. During the interview, Mr. Canady described the items of clothing that the deceased, Christine Gibson, was wearing at the time of the alleged offense. This description matched the clothing found on the body of Mrs. Gibson, after the alleged incident.

5. Mr. Canady informed Officer Echartea that he threw the alleged weapon into a neighbor's stock tank, after the alleged incident.

6. Mr. Canady accompanied Officer Echartea and other officers to the stock tank.

7. Officer Echartea repeated the Miranda warnings. (SX–2, Motion to Suppress).

8. While reading the warnings, Officer Echartea stated "any statement I make may be used against you." (SX–2, Motion to Suppress).

9. Officer Echartea reduced the oral statement to writing. (SX–3, Motion to Suppress).

10. Officer Echartea and Fairfield P.D. Officer Billy Barlow each read the written statement to Mr. Canady and repeated the Miranda warnings, before Mr. Canady signed the written statement. (SX–3, Motion to Suppress).

11. Officers Echartea and Barlow stated under oath, that Mr. Canady understood his Miranda rights, and that he voluntarily waived them.

12. It is the opinion of Raymond F. Finn, Ph.D., that Mr. Canady would not understand his rights under *Miranda v. Arizona,* because intellectually he is seven or eight years of age, and he is subject to suggestibility.

13. Dr. Finn based his opinion upon a review of Mr. Canady's education records, a clinical interview on October 15, 1999, a review of Mr. Canady's written statement (SX–3, Motion to Suppress), and the result of several psychological tests that he administered (the Wechsler Adult Intelligence Scale–Revised Edition, the Trail Making Test, and the Gudjohnnson Suggestibility Scale).

14. Dr. Finn stated that during his review of Mr. Canady's education records he discovered that Mr. Canady scored 64 on the Test of Nonverbal Intelligence (TONI). He stated that this score is within the average range.

These findings are not attacked by Canady and are supported by the record.

Additionally, Dr. Finn testified that Canady scored a full-scale 73 on the Wechsler test. He also testified that a person with a full-scale score of 70 or below is considered mentally retarded. The doctor believed that Canady would not understand the *Miranda* warnings unless explained in more simple terms. A former tutor for Canady testified that Canady should not have graduated from high school because he was not reading at an appropriate level. She also testified that if Canady did not understand something she was saying, he would ask her to explain. Canady's high school principal testified that Canady could communicate with his peers but had more difficulty communicating with adults. Officer Echartea testified that he had known Canady for a year and, although Canady was "slow," could carry on a conversation with him. Echartea believed Canady understood his rights and waived those rights.

Based on the record before us, the trial court was clearly within its discretion in finding that Canady understood his rights and the effect of waiving those rights. *See Ripkowski v. State,* 61 S.W.3d 378, 384 (Tex.Crim.App.2001). Canady's first issue is overruled.

### DISQUALIFICATION

In his second issue, Canady contends that the trial court erred in denying his motion to disqualify the State's attorney. Specifically, he contends that the District Attorney had a conflict of interest because he had represented Canady in a prior criminal charge. Although the State initially argues about whether the trial court has the authority to remove or disqualify a district attorney from a case, we need not reach this question if we decide that no conflict exists. The law in this area is less than well-settled. *See State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 927 (Tex.Crim.App.1994) (orig.proceeding); *State ex. rel. Eidson v. Edwards,* 793 S.W.2d 1, 4–6 (Tex.Crim.App.1990) (orig.proceeding). Thus, without deciding whether the trial court has the authority to disqualify a district attorney, we will first determine whether the record supports a claim that the District Attorney was subject to disqualification based upon a conflict of interest.

Article 2.01 of the Code of Criminal Procedure provides, in part, that "[e]ach district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." TEX.CODE CRIM. PROC. ANN. art. 2.01 (Vernon Supp.2002). When a district attorney prosecutes someone whom he previously represented in the same case, the conflict of interest is obvious and the integrity of the prosecutor's office suffers. *Ex parte Spain,* 589 S.W.2d 132, 134 (Tex. Crim.App.1979); *see also Ex parte Mor-*

*gan,* 616 S.W.2d 625, 626 (Tex.Crim.App. 1981). However, where a district attorney has not represented a defendant in any way or at any stage of a current prosecution, there is no conflict, and the district attorney is not disqualified. *Munguia v. State,* 603 S.W.2d 876, 878–79 (Tex.Crim. App.1980); *Reed v. State,* 503 S.W.2d 775, 776 (Tex.Crim.App.1974). The movant has the burden to prove the district attorney is disqualified. *See Hill,* 887 S.W.2d at 927; *Reed,* 503 S.W2d at 776. If an elected district attorney is lawfully disqualified from prosecution of a certain cause, his assistants will also be disqualified. *Eidson,* 793 S.W.2d at 5, n. 5; *State v. May,* 270 S.W.2d 682, 684 (Tex.Civ.App.-San Antonio 1954, no writ).

Canady argued to the trial court that the District Attorney's prior representation and the knowledge he gained from that representation created a conflict of interest. No testimony was elicited that the District Attorney ever represented Canady in the present prosecution or that he ever discussed the present prosecution with Canady. Canady had the burden to prove a conflict of interest. He did not satisfy that requirement. Thus, Canady did not establish a conflict of interest, and the trial court did not err in denying his motion to disqualify. His second issue is overruled.

## Conclusion

Having overruled Canady's issues on appeal, we affirm the judgment of the trial court.