NUMBER 13-05-00482-CR 


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JOSE CAVAZOS A/K/A 

BLAS CAVALOS, Appellant.

 

v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 107th District Court 

of Willacy County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Vela



 A jury found appellant, Jose Cavazos, a/k/a Blas Cavazos, Jr., guilty of murder,
and the trial court sentenced him to forty years in prison. He challenges the conviction
by seven points of error. We affirm. 

Background


 On June 25, 2001, while driving around Lyford, Javier Maciel and George
Gonzalez picked up appellant and went to a party at Alfredo Serrato, Jr.'s house. 
There, Maciel touched Gonzalez's chin and pushed him, and appellant touched
Gonzalez in the same manner. After that, Gonzalez left. Maciel followed Gonzalez 
and tried to calm him down. Gonzalez hid at a nearby house. After Gonzalez left the
house, Maciel and appellant arrived, and appellant pushed open the front door and
angrily asked the homeowner for Gonzalez. Gonzalez was home by 12:05 a.m. 
Maciel testified that after he and appellant left the party, they went to Gonzalez's
house and picked him up. Gonzalez got in the front passenger seat, and appellant sat
in the back. Appellant suggested Maciel drive to the cemetery. En route, Maciel heard
a gunshot from the back seat and saw Gonzalez's head drop. Maciel said that
appellant ordered him at gunpoint to leave Gonzalez's body in the cemetery and take
him home.

 The forensic evidence showed Gonzalez was shot in the back of his skull at
close range. Two small-caliber bullet fragments were removed from his spinal cord. 
No murder weapon was found; however, a spent .22 caliber shell casing was
recovered from the rear seat of Maciel's car. About four months before the murder,
the sheriff's office had returned a .22 caliber semiautomatic handgun and a box of .22
caliber ammunition to appellant. After the murder, appellant told investigators the box
of ammunition was at his parents' house. An FBI firearms examiner determined the
same company made the spent casing as well as the cartridges in the box of
ammunition and that the spent casing was produced by the same tool as eight
cartridges in the box of ammunition. A DPS firearms examiner found lead residue,
consistent with that from a firearm, on the front passenger seat of Maciel's car. He
opined that the residue patterns were consistent with the weapon being held above
the seat at a downward direction and not sideways.

 Appellant's Evidence


 DNA analyses showed appellant's clothing did not contain Gonzalez's blood and
that Maciel's boots, along with the front passenger seat of his car, had Gonzalez's
blood on them. Testimony from Alfredo Serrato, Jr., showed that while at the party,
Maciel told Gonzalez "that his [Maciel's] wife had told him [Gonzalez] not to whistle
or look at her when she was hanging clothes." Maciel then grabbed Gonzalez's chin. 
After that, appellant told Gonzalez, "'Now it's my turn.'" Gonzalez left the party, and
Maciel followed him. A few minutes later, Maciel returned and said, "'I've already
kicked his ass.'" 

 Rosemarie Gonzalez testified she picked up appellant and that they looked for
Maciel at his house. He was not there, so she took appellant home before midnight. 
Rosendo Villagomez, who lived with Maciel's mother, testified that Maciel came home
before midnight with blood stains on his pants and said that appellant had killed
Gonzalez. Maciel asked him for money and said he had to leave the area. He also said
that Maciel changed his clothes. Villagomez took Maciel and his mother to call 911. 
The 911 call was received at 1:06 a.m. 

 Maciel said on cross-examination that when he left Serrato's to follow Gonzalez,
he neither fought with him nor hit him. He denied having anything to do with the
murder. He said they went to the cemetery "late" "around midnight" and that
appellant was with him when everything happened. He denied changing his pants and
asking Villagomez for money. He said that he changed his shirt because it "felt ugly."

 Appellant denied killing Gonzalez and said he had followed Gonzalez to the
house because he was concerned for him. He said that Maciel took him home about
10:30 p.m. Shortly thereafter, Rosemarie Gonzalez picked him up to look for Maciel
at his house. They could not find him, so she took him home before midnight. His
cross-examination showed he had owned a .22 caliber semiautomatic handgun which
was stolen shortly before the murder. When the State asked him to identify Exhibit
16, he said, "It looks like a box of shells that I had at my house, at my parents'
house." When the State asked him, "And is that the ammunition that you use for your
gun that got stolen?", he replied, "That's the ammunition that I had at my house at the
time, yes." He said that about a week before the murder, he had confronted Gonzalez
about a rumor that Gonzalez had an affair with his wife. Appellant's testimony
showed that when he and Gonzalez were at Serrato's party, appellant told Gonzalez,
"'Ahora va la mia.'" When the State asked appellant what he meant by the remark,
he said that he was "going to have a little talk" with Gonzalez and that "I just didn't
want the rumor to spread around. . . ." 





Factual Sufficiency

 By point two, appellant challenges the factual sufficiency of the evidence to
support his conviction. When reviewing the factual sufficiency of the evidence, we
view all the evidence in a neutral light, favoring neither party. Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex.
Crim. App. 2005). We will set the verdict aside only if: (1) the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) the verdict is
against the great weight and preponderance of the evidence. Watson, 204 S.W.3d
at 404; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We cannot
conclude a conviction is "clearly wrong" or "manifestly unjust" simply because we
would have voted to acquit. Watson, 204 S.W.3d at 404. In other words, we may
not simply substitute our judgment for the fact-finder's judgment. Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). To
reverse for factual sufficiency, we must determine, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
verdict. Watson, 204 S.W.3d at 404. In examining a factual sufficiency challenge,
we defer to the fact-finder's determination of the credibility of the evidence. 
Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

 A person commits murder if he (1) intentionally or knowingly causes the death
of an individual or (2) intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual. Tex. Pen. Code Ann.
§19.02(a), (b) (Vernon 2003). Intent can be inferred from the acts, words, and
conduct of the defendant. Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App.
1995); Lee v. State, 964 S.W.2d 3, 8 (Tex. App.-Houston [1st Dist.] 1997, pet.
ref'd).

 Even if we ignore Maciel's incriminating testimony, the circumstantial evidence
ties appellant to the murder. Circumstantial evidence, by itself, may be enough to
support a jury's verdict. Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999); see Smith v. State, 965 S.W.2d 509, 515 (Tex. Crim. App. 1998). It is not
necessary that every fact point directly and independently to the defendant's guilt; it
is enough if the conclusion is warranted by the combined and cumulative force of all
the incriminating circumstances. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim.
App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1994). In this
case, a rational jury could have determined the following from the evidence: (1)
appellant had a motive to kill Gonzalez; (2) Gonzalez's blood was found on the front
passenger seat of Maciel's car; (3) appellant had owned a .22 caliber semiautomatic
handgun; (4) Gonzalez was shot from behind with a small-caliber weapon; (5) appellant
had a box of .22 caliber ammunition at his parents' house; (6) an FBI firearms
examiner determined the spent .22 caliber casing found in the rear seat of Maciel's car
was made by the same company that made the cartridges in the box of ammunition;
(7) the FBI firearms examiner determined the same tool made the spent casing as well
as eight of the cartridges in the box of ammunition; (8) a DPS firearms examiner found
lead residue, consistent with that from a firearm, on the front passenger seat of
Maciel's car; (9) the DPS firearms examiner opined that the residue patterns were
consistent with the weapon being held above the car seat at a downward direction and
not sideways; and (10) Maciel carried Gonzalez's body from the car, thus, spilling
blood on his boots and pants.

 Appellant provided controverting evidence showing that: (1) on the night of the
murder, he was with Rosemarie Gonzalez and that they had looked for Maciel at his
house; (2) Maciel was not home, so she took him home before midnight; (3) Maciel
came home before midnight with blood on his pants and changed clothes; (4) Maciel
had asked Villagomez for money and wanted to leave the area; (5) Gonzalez's blood
was found on Maciel's boots and on the front passenger seat of his car; (6) appellant's
clothes did not have Gonzalez's blood on them; and (7) the direct evidence did not
show that the bullet fragments removed from Gonzalez were from a .22 caliber bullet. 
Based on a neutral review of all the evidence, circumstantial and direct, we conclude
that the evidence is not so obviously weak or so greatly outweighed by contrary proof
that it would not support the finding of guilty beyond a reasonable doubt. See
Watson, 204 S.W.3d at 404. 

Accomplice-Witness Instruction


 By this same point, appellant argues that because Maciel was indicted for the
murder, he was an accomplice witness as a matter of law, and therefore, he was
entitled to an accomplice-witness instruction. A co-indictee is an accomplice as a
matter of law. Patterson v. State, 204 S.W.3d 852, 858 (Tex. App.-Corpus Christi
2006, pet. filed) (citing Hendricks v. State, 508 S.W.2d 633, 634 (Tex. Crim. App.
1974)). When a witness is an accomplice as a matter of law, the trial court is required
to provide an accomplice-witness instruction to the jury. DeBlanc v. State, 799
S.W.2d 701, 708 (Tex. Crim. App. 1990). Because appellant did not object that the
charge did not contain an accomplice-witness instruction, "he will obtain a reversal
only if the error is so egregious and created such harm that he 'has not had a fair
trial'-in short, 'egregious harm.'" Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984) (op. on reh'g) (emphasis in original). "[T]he actual degree of harm
must be assayed in light of the entire jury charge, the state of the evidence, including
the contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole." Id.

 Applicable Law & Harm Analysis


 Under Texas law, a conviction cannot stand upon an accomplice's testimony
unless other evidence tending to connect the defendant to the crime corroborates the
testimony. Tex. Code Crim. Proc. art. 38.14 (Vernon 2005). An accomplice-witness
instruction reminds the jury it cannot use the accomplice's testimony to convict the
defendant unless there also exists some non-accomplice testimony tying the defendant
to the crime. Cocke v. State, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). An
accomplice is a person who participates with a defendant before, during, or after the
commission of the crime and acts with the requisite culpable mental state. Id. 
Participation requires an affirmative act that promotes the commission of the crime
with which the defendant is charged. Id. A person is clearly an accomplice if he or
she, like the defendant, could be prosecuted for the offense or a lesser-included
offense. Id. Sufficient evidence must exist to connect the alleged accomplice to the
criminal offense as a "blameworthy participant," but whether the alleged accomplice-witness is actually charged or prosecuted for his or her participation is irrelevant. Id.

 After reviewing the independent evidence in this case as stated above, we
conclude that it sufficiently corroborates Maciel's testimony. Therefore, we hold that
error concerning the court's failure to instruct the jury that Maciel was an accomplice
witness as a matter of law to not be egregious. Point two is overruled.

Disqualification


 By point one, appellant requests a new trial because the district attorney had a
conflict of interest, and therefore, should have recused himself from this case. The
evidence showed appellant had worked for the Willacy County Sheriff's Office as a
confidential informant. When a district attorney has not represented a defendant in
any way or at any stage of a current prosecution, no conflict exists, and the district
attorney is not disqualified. Munguin v. State, 603 S.W.2d 876, 878-79 (Tex. Crim.
App. 1980); Reed v. State, 503 S.W.2d 775, 776 (Tex. Crim. App. 1974). The
movant has the burden to prove the district attorney is disqualified. Canady v. State,
100 S.W.3d 28, 32 (Tex. App.-Waco 2002, no pet.) Here, the evidence does not
show that the district attorney represented appellant in the present prosecution, that
he discussed the present prosecution with appellant, or that he had any information
about appellant originating from his work as a confidential informant. Accordingly, the
district attorney did not have a duty to disqualify himself. We hold, therefore, that
appellant is not entitled to a new trial. Point one is overruled. 

Failure to Swear Juror


 By point three, appellant argues the trial court erred in failing to timely swear
in a substituted juror. By point four, he complains that after the court swore in the
substitute juror, the State did not re-introduce testimony it had elicited before the court
swore in the substitute juror. After the court impaneled and swore in the jury, but
before the State's opening statement, the trial court had to dismiss a person from the
jury. Without objection, the court excused her and substituted a new juror in her
place. The new juror was the next venire member on the jury list who had not been
struck or challenged for cause. After the State nearly completed direct examination
of its first witness, Javier Maciel, the court swore in the new juror. Appellant did not
object to the trial court swearing her in at that time. Further, he did not object to the
State's failure to either repeat or re-introduce the portion of Maciel's testimony which
it had elicited prior to the time the court swore in the new juror. Because appellant did
not object to the trial court's untimely swearing in of the new juror, nor to the State's
failure to either repeat or re-offer Maciel's testimony, he has not preserved these
complaints for review. See White v. State, 629 S.W.2d 701, 702 (Tex. Crim. App.
1981); see also Gonzales v. State, 730 S.W.2d 196, 198 (Tex. App.-San Antonio
1987, no pet.) (untimely administered oath to jury does not render verdict void). Points
three and four are overruled.

Ineffective Assistance of Trial Counsel


 By point five, appellant complains of ineffective assistance of trial counsel. To
show his trial counsel was ineffective, appellant must show by a preponderance of the
evidence that counsel's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for counsel's
deficiency, the result of the trial would have been different. Strickland v. Washington,
466 U.S. 668 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App.
2005). Review of counsel's representation is highly deferential, and the reviewing
court indulges a strong presumption that counsel's conduct fell within a wide range
of reasonable representation. Salinas, 163 S.W.3d at 740. A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim. Id. "'In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motive behind trial counsel's actions.'"
Id. (quoting Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001)). To
overcome the presumption of reasonable professional assistance, "'any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.'" Salinas, 163 S.W.3d at 740 (quoting
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

 Appellant alleges that his trial counsel was ineffective because he did not
request an accomplice-witness instruction. Although counsel's failure to object to the
charge on this basis constituted error, see Robinson v. State, 665 S.W.2d 826, 831
(Tex. App.-Austin 1984, pet. ref'd), we cannot conclude this failure prejudiced
appellant's defense. As previously discussed, the State produced ample corroboration
evidence. We therefore cannot conclude that, but for counsel's deficiency, the result
of the trial would have been different. See Tong v. State, 25 S.W.3d 707, 712 (Tex.
Crim. App. 2000); Patterson, 204 S.W.3d at 861.

 Appellant also contends trial counsel was ineffective because he called the
State's star witness, Javier Maciel, as his own witness and elicited prejudicial
testimony from him that appellant killed Gonzalez. Counsel called Maciel as a witness,
and after he denied seeing the gun, counsel asked him, "So if you told the jury before
. . . that [appellant] was ordering you at gunpoint, that cannot be true either?" He
replied, "I figured since he killed my friend, I mean, he had the gun. I was scared." 
Counsel could have decided to call Maciel as a defense witness to attack his credibility
by trying to show that because he did not see a gun, he was lying about being afraid
of appellant. When there is at least the possibility that counsel's conduct could have
been legitimate trial strategy, we will defer to counsel's decisions and deny relief on
an ineffective-assistance claim on direct appeal. Murphy v. State, 112 S.W.3d 592,
601 (Tex. Crim. App. 2003).

 Lastly, appellant claims trial counsel was ineffective because he bolstered the
State's case by eliciting inadmissible hearsay from the State's expert witness, Carlo
Rosati, an FBI firearms examiner. On cross-examination, Rosati testified that his
written report did not claim that there was a .22 caliber bullet fragment removed from
Gonzalez's body. Accordingly, counsel did not bolster Rosati's testimony. Point five
is overruled.



Admission of Appellant's Letters


 By point six, appellant argues the trial court erred by admitting Exhibits 27 and
28, which are letters he wrote to his wife after his arrest for Gonzalez's murder. He
argues the letters were inadmissible under the marital-privilege rule. See Tex. R. Evid.
504. Because appellant stipulated to the admission of Exhibit 28, he waived the
privilege. He objected to Exhibit 27 on the basis that it was "irrelevant." However,
this complaint is not preserved for review. See Tex. R. App. P. 33.1; Dixon v. State,
2 S.W.3d 263, 265 (Tex. Crim. App. 1998) (to preserve error, point of error on appeal
must correspond to the objection made at trial). He also argues the trial court erred
by allowing his wife to testify about the contents of the letters. However, she
testified voluntarily; therefore, Rule 504 did not prevent her from testifying about the
contents of the letters. See Tex. R. Evid. 504(b)(1). Point six is overruled.

Rebuttal Testimony


 By point seven, appellant argues the trial court erred by admitting hearsay
rebuttal testimony. The State called Juanita Posas as a rebuttal witness, who testified
that on one occasion, Miguel Amaya came to her house at 3:00 a.m. and told her that
"Joe [appellant] had a gun over there and asked him to hold the gun." When the State
asked her, "Did he [Amaya] give you information with regard as to whether or not the
defendant told him how George Gonzalez had been killed?", appellant objected, but the
trial court did not rule on the objection. Thus, the complaint is not preserved for
review. See Tex. R. App. P. 33.1; Dixon, 2 S.W.3d at 265 (to preserve error, 
complainant must obtain adverse ruling on objection from trial court). Point seven is
overruled.

 The trial court's judgment is affirmed.

 

 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 15th day of March, 2007.