HAWKINS, Circuit Judge,
concurring:
I concur in the majority Opinion and write separately only because I believe Kristi Lunbery presented sufficient evidence that her trial defense counsel’s decision not to further investigate or present expert testimony regarding false confessions fell below an objective standard of reasonableness.
The only evidence linking Kristi to the murder was her own statement, which she claimed was false. There was no forensic evidence connecting her to the crime, the murder weapon was never found and, even in her confession, Kristi displayed no knowledge of crime details not publicly known (such as the location of the murder weapon or how she managed to shoot her husband in a small, one bedroom house with two small children present). But she had confessed and it is hard to imagine anything more difficult to explain to a lay jury. After all, people do not just confess to crimes they did not commit, do they? Well, it turns out they sometimes do. Among the hundreds of persons exonerated of serious crimes through DNA testing are numerous individuals who earlier confessed.[1]
Kristi’s defense lawyers recognized this problem and reached out to an expert in the field of false confessions, Dr. Richard Ofshe. Dr. Ofshe reviewed various materials relating to the murder and a videotape of Kristi’s confession, and concluded it was likely a “stress compliant false confession.” For Dr. Ofshe, the failure of a confession to fit the facts of a crime and the inability of a confessor to supply information that should be known to the perpetrator were “hallmarks of a false confession.”
Dr. Ofshe recommended that Kristi be evaluated by a competent clinical psychologist who was familiar with the phenomenon of stress compliant confessions, and, in particular, that Kristi take the “Gudjonsson test” for interrogative suggestibility. Kristi’s attorney then contacted two local Redding psychologists; one had not heard of the test but agreed to “look into the situation”; the other had heard of it but had never administered it, and also suggested that he would need additional corroboration not mentioned by Dr. Ofshe to “support any conclusion that Kristi was vulnerable to manipulation techniques” (apparently not understanding he was only being asked to administer the test).
Kristi never took the Gudjonsson test prior to trial. In a somewhat confusing memo to the file, her attorney notes in one paragraph that he has made arrangements for Dr. Ofshe to testify on November 5th, then in the following paragraph concludes that the testimony would likely be inadmissible, and finally that it would be best simply to have Kristi testify because the jury ultimately needed to believe her. After Kristi was convicted, Dr. Ofshe wrote to her to express his sadness and related that he had anticipated he would be testi *764 fying at her trial, noting that he did not discover he was not going to be called until he contacted the attorney’s office himself and discovered the trial was already underway. When Kristi’s habeas counsel contacted Kristi’s trial attorneys about the decision not to call Dr. Ofshe, they engaged in finger pointing, each claiming the decision was made by the other.
Because the California Supreme Court summarily denied this claim without a reasoned opinion, we must conduct a de novo review of the record to determine whether the denial was contrary to or an unreasonable application of federal law. Greene v. Lamben, 288 F.3d 1081, 1088-89 (9th Cir. 2002). The district court concluded that Kristi failed to establish that her counsel’s representation fell below an objective standard of reasonableness, see Strickland, 466 U.S. at 688, 104 S.Ct. 2052, and concluded instead that counsel made a reasonable, tactical decision not to call Dr. Ofshe. But a tactical decision infers a calculated reason to do or not do something. Here there was no reason not to call Dr. Ofshe and every reason to do so. The record fairly smacks of incompetence, from the conflicting note to file, to the attorneys pointing fingers at one another, to the failure to even communicate the decision to the expert. It is also far from clear whether any decision, reasoned or not, was ever made here or by whom. Even though “strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,” the decision to prematurely limit an investigation may be, in and of itself, unreasonable. Id. at 690-91, 104 S.Ct. 2052 (“[Cjounsel has a duty to make reasonable investigations.”).
As the Supreme Court explained in Wiggins v. Smith, a premature choice to abandon a potentially fruitful avenue can make “a fully informed decision with respect to[ ] strategy impossible” and render counsel’s performance deficient. 539 U.S. 510, 527-28, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Here, counsel gave up after contacting two local psychologists by phone, and never tested Kristi to determine whether Dr. Ofshe’s preliminary opinion could be bolstered or corroborated.
Counsel’s proffered reasons for failing to offer Dr. Ofshe’s testimony are also problematic. Counsel opined that Dr. Ofshe’s testimony would likely be inadmissible if the government lodged a Kelly-Frye objection because the Gudjonsson test was not widely accepted.[2] Leaving aside that counsel failed to even attempt its admission, at the time of Kristi’s trial, expert testimony based in part on the Gudjonsson test had been admitted in several other cases. See Canady v. State, 100 S.W.3d 28, 31 (Tex.Ct.App.2002); United States v. Doe, 74 F.Supp.2d 310, 318 (S.D.N.Y.1999); United States v. Raposo, 1998 WL 879723, *3, 5-6 (S.D.N.Y. Dec.16, 1998); see also Vent v. State, 67 P.3d 661, 670 (Alaska App.2003) (noting “case law and law review commentary is split over whether to admit false confession expert testimony”).[3]
Second, counsel opined that Ofshe’s testimony could have a “negative impact” because it was “so lacking in substance.” This is not an excuse but a self-fulfilling prophesy: if Dr. Ofshe’s testimony lacked “substance” or corroboration, it was due to counsel’s failure to obtain testing that *765 would have provided it, despite being advised to do so. Surely that should be enough, but counsel also appears to have discounted Dr. Ofshe’s specialized expertise in the area of false confessions in favor of the preliminary views of a local psychologist, Dr. Caruso. Summing up the decision not to even attempt to offer Dr. Ofshe as a witness, counsel wrote: “As Dr. Caruso put it: ‘Kristi’s best defense would be her explanation, the jury needs to believe Kristi.’ ”
This rather naively assumes that a jury would be easily persuaded — that an innocent person would confess to a crime they did not commit — by the confessor’s testimony alone. Of course the jury had to believe Kristi, but the jurors would have been better equipped to evaluate her credibility and the confession itself had they known of the identified traits of stress-compliant confessions and been able to compare them to her testimony. Reversing a conviction where the trial court excluded the testimony of the very expert involved here, the Seventh Circuit noted that Dr. Ofshe’s testimony went to the heart of the defense, and had it been admitted, it “would have let the jury know that a phenomenon known as false confessions exists, how to recognize it, and how to decide whether it fit the facts of the case being tried.” United States v. Hall, 93 F.3d 1337, 1345 (7th Cir.1996); see also Boyer v. State, 825 So.2d 418, 420 (Fla.Ct.App.2002) (“It is for the jury to determine the weight to give to Dr. Ofshe’s testimony, and to decide whether they believed his theory or ‘the more commonplace explanation that the confession was true.’ ”) (quoting Hall, 93 F.3d at 1345).
For these reasons, in addition to the persuasive case for granting the writ made by Judge Noonan in the majority Opinion, I would also reverse the district court’s decision that counsel’s choice — not to further investigate or offer Dr. Ofshe as an expert witness — was a reasonable tactical decision and that the California court was not objectively unreasonable in denying the claim. Having said that, I agree that it is not presently necessary to delay the grant of the writ by remanding for an evidentiary hearing to determine Strickland prejudice.[4]

. Brandon L. Garrett, The Substance of False Confessions, 62 Stan. L.Rev. 1051 (April 2010) (examining forty false confessions to rapes and murders later exonerated by DNA evidence); see also Mark A. Godsey, Shining the Bright Light on Police Interrogation in America, 6 Ohio St. J.Crim. L. 711, 724 (Spring 2009) (noting that in addition to DNA exoneration, confessions have also been proven false when the identity of the true perpetrator is later discovered, or when it is later demonstrated it would have been physically impossible for the defendant to have committed the crime, such as when it is proven the defendant was in jail for another crime on the date the new crime occurred).

. The trial memo does not elaborate on whether this conclusion is based on further research, or if it is based only on unfamiliarity of two local psychologists with the test.

. Indeed, after Kristi’s trial, Dr. Ofshe’s testimony was admitted in two other California cases, People v. Gulley, 2008 WL 4152951, *8 (Cal.Ct.App.2008), and People v. Cota, 2007 WL 3360054, *12 (Cal.Ct.App.2007).

. Obviously, if this were the only issue before us, I would favor remand for such purposes.