

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
|  | § | No. 08-13-00195-CR |
| IN RE:   THE STATE OF TEXAS, | § | AN ORIGINAL PROCEEDING |
| Relator. | § | IN MANDAMUS |
|  | § |  |
|  | § |  |

## **O P I N I O N**

Relator, the State of Texas, petitions this Court to issue a writ of mandamus directing Respondent, the Hon. Bonnie Rangel, Judge of the 171st District Court, to vacate an order disqualifying the El Paso County District Attorney's Office[1] from prosecuting Real Party in Interest, James McGinnis, in Cause Number 20120D05588 for an unspecified criminal offense committed against a child.

### **BACKGROUND**

McGinnis, represented by Theresa Caballero, filed a motion to disqualify the District Attorney's office from prosecuting his case.  In his motion, McGinnis alleged that Assistant

---

[1] We observe that Relator is the District Attorney for the 34th Judicial District of Texas.

District Attorney Holly Rodriguez is a material witness in McGinnis's prosecution because she "monitored" the child witness's forensic interviews at the Child Advocacy Center, and observed what the child said "while the camera was running and while it was not running." McGinnis asserted that these circumstances render Rodriguez a material witness whom he intends to call as a defense witness to impeach the child's testimony during pre-trial and trial proceedings if it differs from the statements provided during the forensic interviews.

The State, represented by Penny Hamilton, filed a written response. It construed McGinnis's motion to allege a conflict of interest, and cited legal authority supporting its contentions that no proper basis for disqualification existed, that the trial court was not vested with general authority to remove a district attorney, and that a party seeking disqualification "cannot invite the necessary actual prejudice by unnecessarily calling the opposing counsel as a witness." The State argued that McGinnis had presented only a hypothetical circumstance for calling Rodriguez as a witness, unsupported by fact or by citation to legal authority, and failed to show actual prejudice that would require the disqualification of the District Attorney or any Assistant District Attorney.

At the June 28, 2013, hearing on his motion, McGinnis asserted that he was permitted to "use witnesses to impeach another witness" and complained that Rodriguez had inserted herself into the investigative process. The State countered the motion by reiterating and referring to the arguments presented in its written response. The State argued that if the child's testimony differed at trial from the statements made during the forensic interview, it would be appropriate to impeach the child, and if there were issues to be examined about the interview, the actual forensic interviewer would be a proper witness. Explaining that Assistant District Attorney Rodriguez

2

was merely present behind a mirror during the forensic interview and had no kind of interaction with the child, and because the interview had been recorded without interruption, the State asserted Rodriguez is not a material witness and the uninterrupted recording "stands on its own." It further contended that McGinnis's motion and arguments for the disqualification of the District Attorney's office merely presumed future harm, and failed to show any actual prejudice in the pending proceedings rising to the level of a due-process violation. The State explained to Judge Rangel that Child Advocacy Center protocol requires that two agencies be present during the forensic interview so that there are no witness issues.

In response, Caballero argued:

CABALLERO: If you just take the prosecutor's argument, it proves my point. She says . . . no impeachment witnesses would be necessary because it's recorded. Well, not everything that's said is properly recorded, a recording can be lost, a recording can be unclear, a recording can be lots of thing[s].

After the State identified that the recording of the forensic interview was not lost, the trial court observed:

THE COURT: This is the problem I see[.] You say it's recorded and any question you can go back to the recording and see. I –as far fetched as it [may] seem, there [may be] a scenario where you had to – you had to recess 15 times because this child couldn't compose himself or because the child kept forgetting or because whatever. What is not on the actual recording might be a critical bit of information, might be, right?

THE STATE: If that scenario happens?

THE COURT: Right.

THE STATE: Yes, if that scenario happens.

THE COURT: And we don't know that.

THE STATE: Well, we do know that, Your Honor. I mean, what we would ask is that the Court, in making [its] decision, look at the recording because the policy

3

and procedure is –

THE COURT: No, ma'am. You're not understanding. You're not understanding.

THE STATE: No, what I'm saying is there is no recess where the recording stops and then it starts back up again. It's a single recording, nobody leaves the room. So there is no scenario where you have conversations where you stop and then you go talk and then you come back and then you do that. I understand the Court's question, but I can tell you we do know that because of the recording. And we would ask that we be able to provide the Court – if you would like to look at that in making your decision as for the completeness of the recording. We can provide you a copy of that so that you can look at it for yourself in making the determination.

THE COURT: To see that you did not take any recesses?

THE STATE: Right. Exactly. . . . The protocol is the camera stays running. If the child has to go to the bathroom, for example.

The hearing then strayed into a colloquy regarding hypothetical circumstances regarding who may have access to a child who leaves an interview to use a restroom. The State explained:

THE STATE: [Y]ou can envision all sorts of different scenarios. All I can do is tell you, Judge, that's not the way that the circumstances were set up and certainly not applicable in this case. . . . In this case, there is absolutely no disruption of the interview. There [are] no breaks. There is no interaction between Ms. Rodriguez and the child that's being interviewed.

THE COURT: . . . But if there was some kind of [interaction] with that child . . . then Ms. Rodriguez would become a very material witness.

.   .   .

THE STATE: [N]ot Ms. Rodriguez because our position is, she's sitting behind the mirror. She doesn't leave, so she couldn't be a material witness in that regard because she wouldn't even know that that occurred.

THE COURT: But we don't know that. We don't know that. We know if she left. We don't know if she followed the child. We don't know that. . . . I have got to tell you this, the mere fact that she's there present raises these issues. It really does. I don't think the person prosecuting the case should be present at these videotaped recordings because I've given you a couple of scenarios where the DA

4

[who] is present . . . may become a material witness because of those scenarios that may happen.

THE STATE:   Well, Your Honor, it's our position that . . . that scenario . . . is not applicable to the case at hand--.

Judge Rangel stated that she needed to look at the video recording and explained, "It might happen and if and when it does, you're subjecting yourself to a disqualification."   Judge Rangel continued to hypothesize other situations whereby the District Attorney or Assistant District Attorneys in that office may be subject to disqualification.

The State repeatedly reminded Judge Rangel that none of the hypothetical scenarios depicted during the subsequent colloquy involved the circumstances of the forensic interview which were the subject of McGinnis's motion.   The State again offered to provide a copy of the video recording to Judge Rangel so that she could satisfy herself that the scenarios with which she was concerned did not occur and could see that there was no disruption in the recording of the forensic interview.

McGinnis asked Judge Rangel to "take the common sense approach to this basic set of facts which is, protocol, smotocol" and argued that when the members of the District Attorney's Office "participate by being present in the investigation [-] because that's what the Advocacy Center is, in [its] so-called investigation, they make themselves a witness to how the investigation was conducted or not[,] and what was said or not, and they subject themselves to being called to the witness stand."

The State asked Judge Rangel to review the authority set out in its response to McGinnis's motion, again requested that she view the video recording of the forensic interview, and inquired of Judge Rangel when she would like to receive the video recording.   Judge Rangel asked

5

Caballero if she had seen the video. Caballero answered that she had not seen the video recording and argued that whether the recording was uninterrupted "doesn't have anything to do with what I am stating here."

The State then informed Judge Rangel that it could deliver the video recording to the court that afternoon if she would provide the State with her instructions. Judge Rangel determined that she did not need to view the video recording and informed the parties that she would take the matter under advisement and, if she needed to view the recording, she would contact them.

Judge Rangel granted McGinnis's motion and issued an order disqualifying the El Paso County District Attorney's Office from prosecuting McGinnis's case. The District Attorney's Office filed a petition for writ of mandamus on August 13, 2013. McGinnis filed a two-page response to the mandamus petition asserting only that mandamus relief should be denied because the State has not filed a sufficient record. He does not address the merits of the mandamus petition.

## DISCUSSION

We first address McGinnis's complaints regarding the status of the mandamus record. The Rules of Appellate Procedure require that the relator file a certified or sworn copy of any order complained of in the mandamus proceeding. TEX. R. APP. P. 52.3(k). Additionally, the relator must file with the petition a certified or sworn copy of every document material to the relator's claim for relief and a properly authenticated transcript of any relevant testimony from any underlying proceeding. TEX. R. APP. P. 52.7(a). The State filed a sworn copy of the trial court's order, the motion to disqualify, and the State's written response. The mandamus record consists of the reporter's record from the only hearing on the motion to disqualify.

6

McGinnis argues that mandamus relief is not appropriate because the State did not call the prosecuting attorney, Penny Hamilton, to testify as a witness at the hearing. McGinnis does not explain what relevant testimony Hamilton could have provided at the hearing. Further, it was McGinnis's burden to establish that the District Attorney's Office should be disqualified. *See Canady v. State*, 100 S.W.3d 28, 32 (Tex.App. – Waco 2002, no pet.). The District Attorney's Office did not have any burden to prove it should not be disqualified from the case.

McGinnis also asserts that the record is incomplete because it does not include the videotape of the child's interview. He claims that Judge Rangel reviewed the video before granting the motion. The videotape was not offered or admitted into evidence at the hearing. Contrary to what McGinnis represents in his response, Judge Rangel stated at the conclusion of the hearing that she did not need to review the videotape, but if she changed her mind she would "get . . . all of you together" and they would proceed from there. There is no evidence that Judge Rangel ever reviewed the videotape. McGinnis's argument that mandamus relief should be summarily denied because the record is incomplete is without merit.

*Standard of Review*

In a criminal mandamus, the relator must show that he has no adequate remedy at law and what he seeks to compel is a ministerial act. *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex.Crim.App. 2011). It is undisputed that the State cannot appeal the disqualification order. Therefore, the only issue is whether the State has met the second element.

The ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *Bowen*, 343 S.W.3d at 810. A clear right to relief is demonstrated when the facts and circumstances dictate but one rational decision under "unequivocal, well-settled (i.e., from extant

7

statutory, constitutional, or case law sources), and clearly controlling legal principles." *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex.Crim.App. 2013), *quoting Bowen*, 343 S.W.3d at 810. Mandamus is not available to compel a discretionary act as distinguished from a ministerial act. *State ex rel. Holmes v. Denson*, 671 S.W.2d 896, 899 (Tex.Crim.App. 1984). However, even a so-called "discretionary" act may become "ministerial" when the facts and circumstances dictate but one rational decision. *In re State of Texas*, 162 S.W.3d 672, 675 (Tex.App. – El Paso 2005, orig. proceeding), *citing Buntion v. Harmon*, 827 S.W.2d 945, 948 n.2 (Tex.Crim.App. 1992). Mandamus relief is available to the State when a trial judge enters an order for which he has no statutory authority to enter. *State ex rel. Holmes*, 671 S.W.2d at 899.

*Relevant Law*

Under Texas law, each district attorney shall represent the State in all criminal cases in the district courts of his district and in appeals from those cases. TEX. CODE CRIM. PROC. ANN. art. 2.01 (West 2005); *Coleman v. State*, 246 S.W.3d 76, 81 (Tex.Crim.App. 2008). The authority of county and district attorneys cannot be abridged or taken away. *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 4 (Tex.Crim.App. 1990) (plurality opinion). Further, the State may not be represented in district or inferior courts by any person other than the county or district attorney. *Id.*

A trial court may, however, appoint an attorney pro tem to represent the State whenever an attorney for the State is disqualified. TEX. CODE CRIM. PROC. ANN. art. 2.07(a) (West 2005). As applied to prosecutors, the term disqualification must be distinguished from recusal because they are not interchangeable words. *In re Ligon*, 408 S.W.3d 888, 891 (Tex.App. – Beaumont 2013, orig. proceeding), *citing In re Guerra*, 235 S.W.3d 392, 410 (Tex.App. – Corpus Christi 2007,

orig. proceeding).   Legal disqualification in this context refers to the ineligibility to act as the prosecutor in a criminal case.   *In re Ligon*, 408 S.W.3d at 891, *citing Coleman*, 246 S.W.3d at 81. If the district attorney is disqualified, absent from the district, or otherwise unable to perform his duties, the trial court may appoint any competent attorney to perform the duties of the district attorney.   TEX. CODE CRIM. PROC. ANN. art. 2.07(a) (West 2005).

There are only two grounds for disqualification set forth in Article 2.08 of the Code of Criminal Procedure:   (a) district and county attorneys shall not be of counsel adversely to the State in any case, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State; and (b) a judge of a court in which a district or county attorney represents the State shall declare the district or county attorney disqualified for purposes of Article 2.07 on a showing that the attorney is the subject of a criminal investigation by a law enforcement agency if that investigation is based on credible evidence of criminal misconduct for an offense that is within the attorney's authority to prosecute.   TEX. CODE CRIM. PROC. ANN. art. 2.08 (West Supp. 2013).   Neither of these grounds applies in this case.

Recusal refers to the voluntary removal of oneself as a prosecutor because of a conflict of interest or for other good cause.   *In re Ligon*, 408 S.W.3d at 891.   A district attorney who is not legally disqualified may request that the district court permit him to recuse himself in a particular case for good cause.   TEX. CODE CRIM. PROC. ANN. art. 2.07(b-1) ("An attorney for the state who is not disqualified to act may request the court to permit him to recuse himself in a case for good cause and upon approval by the court is disqualified."); *Coleman*, 246 S.W.3d at 81.   The procedure provided for by Article 2.07(b-1) allows the district attorney to avoid conflicts of interest and even the appearance of impropriety by deciding not to participate in certain cases.

9

*Coleman*, 246 S.W.3d at 81. After the trial court approves the voluntary recusal, the district attorney is deemed "disqualified." TEX. CODE CRIM. PROC. ANN. art. 2.07(b-1)(West 2005); *Coleman*, 246 S.W.3d at 81.

The responsibility for making the decision to recuse is that of the district attorney; a trial court does not have the authority to compel the district attorney to recuse. *Landers v. State*, 256 S.W.3d 295, 306 (Tex.Crim.App. 2008); *Coleman*, 246 S.W.3d at 81; *see Johnson v. State*, 169 S.W.3d 223, 229 (Tex.Crim.App. 2005) ("A prosecutor's refusal to recuse himself from the case cannot be corrected because the trial court has no authority to force a recusal."); *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 939 (Tex.Crim.App. 1994) (stating that the district attorney must initiate his own recusal under Article 2.07). The defendant's recourse is to raise the issue as a ground for reversal on appeal and/or file a grievance against the attorney for the alleged violation of the disciplinary rules. *See Landers v. State*, 256 S.W.3d 295, 305-06 (Tex.Crim.App. 2008).

*McGinnis's Motion to Disqualify*

Without citation to any authority, the entirety of McGinnis's motion to disqualify, excluding the introductory and closing formalities, stated as follows:

> Assistant District Attorney Holly Rodriguez of The El Paso County District Attorney's Office is a material witness in this case and therefore the entire District Attorney's Office needs to be disqualified as there is no fire-wall and no such thing as a fire-wall at a District Attorney's Office. Holly Rodriguez was a first-hand witness to both the first and the second forensic interviews held with the alleged complaining witness in this case at the Rainbow Room of the Child Advocacy Center. She is listed in the police reports as having "monitored" both these interviews. Therefore, she is a witness to what the alleged complaining witness was told and what she said both while the camera was running and while it was not running. Further, Holly Rodriguez is subject to being called as a witness if the alleged complaining witness, at the trial or pre-trial hearings, testifies differently than she testified at the forensic interviews. The defense will, indeed, call her for this impeachment purpose and, by this Motion to Disqualify, the defense lists Holly Rodriguez as a defense witness in this case.

10

As noted above, the motion certainly does not state either of the legal grounds for disqualification set forth in Article 2.08, and McGinnis did not introduce any evidence at the hearing that would make either ground applicable. TEX. CODE CRIM. PROC. ANN. art. 2.08 (West Supp. 2013). Given that a trial court cannot compel a district attorney to recuse, the trial court did not have the authority to disqualify the entire District Attorney's Office. The State has established its entitlement to mandamus relief.

## CONCLUSION

We conditionally grant mandamus relief and order Respondent to vacate the Order on Motion to Disqualify District Attorney's Office in Cause Number 20120D05588. We are confident Respondent will comply, and the writ will issue only if Respondent fails to do so.

GUADALUPE RIVERA, Justice

June 6, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)